```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MARK ORLANDO,                                                 :
                    Plaintiff,                                :
                                                              :        OPINION AND ORDER
v.                                                            :
                                                              :        22 CV 6161 (VB)
DR. GAETAN ZAMILUS,                                           :
                    Defendant.                                :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Mark Orlando, proceeding pro se and in forma pauperis, brings this Section 1983 action against defendant Dr. Gaetan Zamilus, a doctor at Fishkill Correctional Facility ("Fishkill"), in Beacon, New York, alleging defendant violated his Eighth Amendment rights by not attending to a wound on his left knee that ultimately required hospitalization and left him permanently scarred.

Now pending is defendant's motion to dismiss the complaint pursuant to Rule 12(b)(6). (Doc. #18).

For the reasons set forth below, the motion is DENIED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint, plaintiff's opposition, and documents attached to or incorporated by reference in the complaint and opposition, and draws all reasonable inferences in plaintiff's favor, as summarized below.[1]

---

[1] When "evaluating the legal sufficiency of a pro se plaintiff's claims" on a motion to dismiss, courts may consider factual allegations in the plaintiff's opposition to the extent those allegations "are consistent with those contained in the complaint." See Vlad-Berindan v. MTA N.Y.C. Transit, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014) (collecting cases).

1

At all relevant times, plaintiff was incarcerated at Fishkill.

On October 12, 2021, in the afternoon, plaintiff alleges he notified RN Morris, a nurse at the Fishkill nurses' station, of a small cut on his left knee. According to plaintiff, the Fishkill nurses' station is located next to defendant's office. Plaintiff also alleges his cell at the time was fifteen feet away, diagonally across the hallway from, defendant's office.[2]

Plaintiff contends RN Morris acknowledged the cut and its "redness," then spoke with defendant in plaintiff's presence about the cut. (Doc. #2 ("Compl.") at ECF 5). Defendant allegedly said that he would see plaintiff about the cut in the morning. (Opp. at ECF 2).

Plaintiff alleges he did not experience pain in the injured knee that night. However, the following morning, at 9:00 a.m. on October 13, 2021, plaintiff contends he informed R.N.A. Hayes that he had a ruptured boil on the right side of his abdomen, a separate injury, and needed to see defendant immediately. Hayes allegedly noticed blood on plaintiff's shirt and reported plaintiff's injury to defendant. According to plaintiff, he followed Hayes to defendant's office and stood outside while Hayes and defendant spoke. Defendant allegedly responded that he would see plaintiff in the morning for the ruptured boil and the cut to plaintiff's left knee.

Plaintiff alleges he was not seen by defendant on October 13, 14, or 15, 2021. During this time, plaintiff claims his knee wound opened, abscessed, and leaked pus and blood. He

---

Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009) (per curiam).

[2] With his opposition, plaintiff submitted a hand-drawn diagram of the relevant section of Fishkill depicting the spacing of these offices and his cell. (Doc. #24 ("Opp.") at ECF 10).

"ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

2

contends he self-treated the wound with cold compresses and sterile water as well as covered it with abdominal pads. Plaintiff further alleges he repeatedly showed this injury to nursing staff, including a nurse he spoke with on October 14, who told him she spoke with defendant and that defendant would see plaintiff "shortly." (Compl. at ECF 5; Opp. at 4).

On October 15, 2021, at 9:00 a.m., plaintiff was taken to the first floor of Fishkill for a previously scheduled surgical consult with Dr. Roth for a fistulectomy, an issue unrelated to either his knee or boil injuries. At this time, plaintiff contends he was in extreme pain and was running a 102.7-degree fever. On the way back to his cell after the appointment with Dr. Roth, plaintiff saw defendant in the hallway outside defendant's office and called out to him. Plaintiff alleges defendant responded, "I will see you before I leave." (Compl. at ECF 6).[3]

Plaintiff alleges defendant was not at Fishkill on October 16 or 17, 2021, and did not leave any instructions for plaintiff's treatment or care. During these days, plaintiff contends he was not visited by a doctor, and that he used cold rags and abdominal pads with tape to cover the knee wound.

At approximately 8:30 or 9:00 a.m. on October 18, 2021, plaintiff alleges RN Morris discovered plaintiff on his toilet crying in pain. According to plaintiff, Morris checked his knee wound and, concerned by the wound's severity, advised plaintiff she would get Dr. Wolfe to examine it. Morris allegedly continued to check the knee wound until 3:00 p.m., when she and Dr. Wolfe examined it. Dr. Wolfe explained the knee wound needed to be cleaned and cultured, but that the person who performed cultures was not at Fishkill that day. At 6:00 p.m., Morris

---

[3] In his opposition, plaintiff says defendant also asked if plaintiff had seen a doctor, to which plaintiff responded, "you are the doctor I've been waiting three (3) day to see," but that defendant "did not answer" and "turned around and went into his office." (Opp. at ECF 4).

3

allegedly advised plaintiff that he would be going to Montefiore Hospital in Mount Vernon, New York. He left Fishkill for the hospital at approximately 7:20 p.m. (Compl. at ECF 6).

Plaintiff alleges he was admitted to the hospital from October 18 through October 25, 2021. He contends he was diagnosed with an open abscess and cellulitis, as well as MRSA,[4] and was treated with "around the clock I/V antibiotics." (Compl. at ECF 7). He claims he experienced severe pain.

On October 26, 2021, plaintiff returned to Fishkill and alleges defendant visited him in his cell. According to plaintiff, he showed defendant the "permanent scars on [his] left knee," and asked defendant why he never "came to [assess plaintiff's] wound?" (Compl. at ECF 7). Defendant allegedly responded "Why would I? You do your own wound care" in reference to plaintiff's "long standing belly fistulas." (Id.).

Plaintiff commenced this action on July 19, 2022, seeking monetary damages.

## DISCUSSION

I.  Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, a plaintiff's legal conclusions and "[t]hreadbare recitals

---

[4]  Plaintiff's grievance regarding defendant's lack of care, submitted by defendant with his motion papers (Doc. #20-1), is properly considered in connection with the motion because it is incorporated by reference in plaintiff's complaint. That is, plaintiff refers to the grievance and provides its specific identification number in the complaint— "grievance #FCF-0298-2." (Compl. at ECF 7). Plaintiff also attaches the superintendent's decision on his grievance to his opposition. (Opp. at ECF 24). See Stewart v. Riviana Foods, Inc., 2017 WL 4045952, at *6 (S.D.N.Y. Sept. 11, 2017) ("Generally, a court may incorporate documents referenced where (1) plaintiff relies on the materials in framing the complaint, (2) the complaint clearly and substantially references the documents, and (3) the document's authenticity or accuracy is undisputed.").

of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).[5] Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

---

[5] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

5

II. Eighth Amendment Claim

Defendant argues plaintiff's Eighth Amendment claim must be dismissed because plaintiff's allegations describe only negligence by defendant in treating plaintiff's knee wound, not unconstitutional deliberate indifference to his medical needs.

The Court disagrees.

A. Legal Standard

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Courts have construed the Eighth Amendment to give rise to prisoner claims for deliberate indifference to medical needs. Estelle v. Gamble, 429 U.S. 97, 104–06 (1976).

To state a deliberate indifference to medical needs claim, a plaintiff must plausibly allege (i) the objective prong—a "sufficiently serious" inadequacy of medical care, and (ii) the subjective prong—that the officials in question acted with a "sufficiently culpable state of mind." Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

The objective prong has two subparts.

First, a plaintiff must adequately plead he "was actually deprived of adequate medical care." Salahuddin v. Goord, 467 F.3d at 279. Because "the prison official's duty is only to provide reasonable care," prison officials violate the Eighth Amendment only if they fail "to take reasonable measures in response to a medical condition." Id. at 279–80 (quoting Farmer v. Brennan, 511 U.S. 825, 847 (1994)).

Second, a plaintiff must plausibly allege "the inadequacy in medical care is sufficiently serious." Salahuddin v. Goord, 467 F.3d at 280. Courts assess this by examining "how the

6

offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Id.

If the allegedly offending conduct "is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." Salahuddin v. Goord, 467 F.3d at 280. But if the offending conduct is the "medical treatment given, the seriousness inquiry is narrower." Id. Then, courts look to "the alleged inadequate treatment, not the underlying condition alone," and consider "the effectiveness of the treatment the prisoner received, and the harm that resulted from the alleged shortfalls." Sanders v. City of New York, 2018 WL 3117508, at *8 (S.D.N.Y. June 25, 2018).

Likewise, "[w]hen the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone" in considering whether the prisoner's medical condition is "in objective terms, sufficiently serious." Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003).

Superficial injuries such as "bruises, lacerations, cuts, [or] black eyes," are not typically serious enough injuries to support a deliberate indifference claim. See Boykins v. Lopez, 2022 WL 2307684, at *9 (S.D.N.Y. June 27, 2022). However, "[t]he failure to provide treatment for an otherwise insignificant wound may violate the Eighth Amendment if the wound develops signs of infection, creating a substantial risk of injury in the absence of appropriate medical treatment." Smith v. Carpenter, 316 F.3d at 186; see also Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998) ("[I]f prison officials deliberately ignore the fact that a prisoner has a five-inch gash on his cheek that is becoming infected, the failure to provide appropriate treatment might well violate the Eight Amendment.").

To plead the subjective prong, a plaintiff must allege the prison official acted with "deliberate indifference," which is the equivalent of "subjective recklessness." Salahuddin v. Goord, 467 F.3d at 280. "To satisfy this prong of the deliberate indifference test, a plaintiff must allege only that the defendant was aware of facts from which one could infer that a substantial risk of serious harm existed, and that the defendant actually drew that inference." Dotson v. Fischer, 613 F. App'x 35, 38 (2d Cir. 2015) (summary order).

B.     Analysis

Although it is a close call, the complaint, construed most favorably to plaintiff, plausibly alleges defendant's failure to treat plaintiff's knee injury constituted constitutionally deficient medical care.[6]

Regarding the objective prong, plaintiff has alleged that the six-day delay in treatment to his knee wound caused a small cut to become an infected abscess that permanently scarred him. "Although failure to treat a [cut] unto itself likely does not rise to the level of a constitutional violation, failure to timely treat a [cut] that appears seriously infected—as Plaintiff's [cut] may have been when he requested and was denied medical attention—could conceivably constitute such a violation." Tiggs v. City of New York, 2009 WL 602991, at *2 (S.D.N.Y. Feb. 24, 2009); see also Christian v. Saunders, 2018 WL 3300695, at *10 (S.D.N.Y.) ("Withholding medical evaluation and treatment of a known—and worsening—infection for five days may, depending on the circumstances, constitute objectively unreasonable medical risk."), report and recommendation adopted sub nom, Christian v. Warden of O.B.C.C., 2018 WL 1441401

---

[6] Defendant does not concede plaintiff's allegations meet the objective prong, but presumes, for purposes of this motion, that plaintiff alleges a sufficiently serious medical need existed as of October 15, 2021. (Doc. #19 at 7; Doc. #26 at 5).

(S.D.N.Y. Mar. 22, 2018).  Therefore, plaintiff has pleaded the worsening of his left knee wound was a sufficiently serious injury for Eighth Amendment purposes.

Regarding the subjective prong, plaintiff has pleaded facts from which the Court may infer defendant was aware of plaintiff's worsening infection but intentionally declined to examine him.  By October 14, 2021, plaintiff contends his wound was open, abscessed, and leaking pus and blood.  He claims Morris notified defendant of plaintiff's request for medical care that day, and that defendant responded he would see plaintiff "shortly." (Compl. at ECF 5).  But plaintiff alleges defendant did not see him that day.

Moreover, the following day, plaintiff alleges he was running a high fever from the infection and called out to defendant, and that defendant again said he would see plaintiff before he left Fishkill that day.  However, again, plaintiff alleges defendant did not visit him.

Finally, plaintiff claims defendant said he never treated plaintiff because plaintiff handled his own wound care for a stomach fistula, a different injury.  Drawing reasonable inferences in plaintiff's favor, as the Court must at this stage of the case, this statement supports an inference that defendant intentionally declined to treat plaintiff's knee wound because of plaintiff's prior experience caring for his own fistula.

"While deliberate indifference is not established merely because a provider concludes no medical treatment is necessary, the personnel in question must actually evaluate the patient's condition and make a determination." Sterling v. Akinyombo, 2022 WL 2657223, at *6 (S.D.N.Y. July 8, 2022) (collecting cases).  Therefore, the complaint, construed most favorably to plaintiff, suggests defendant was aware of a substantial risk of harm to plaintiff from his knee wound but consciously disregarded it by intentionally not examining him.

Accordingly, plaintiff's Eighth Amendment deliberate indifference to medical needs claim may proceed.

## CONCLUSION

The motion to dismiss is DENIED.

By September 11, 2023, defendant shall file an answer to the complaint.

By separate Order, the Court will schedule an initial conference.

The Clerk is instructed to terminate the motion.  (Doc. #18).

Chambers will mail a copy of this Opinion and Order and all unpublished decisions to plaintiff at the address on the docket.

Dated: August 28, 2023
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge